Which is Vinson v. Vermilion County, last. Good morning again, welcome back. It's rather like Pavlov dog, my name was called, here I am looking at the confusion. This must, grouping these cases is quite well, because again this is a pleading issue in Vinson. We have a complaint alleging that three out of uniform, unmarked cars pull up to a rural house with a 14-year-old and 9-year-old at home. And of course, as children in the rural areas, as in urban areas are instructed, watch strangers. And the allegations are that they went looking in the garage, looking into the windows, stared into the back door. The 14-year-old panicked, calls her pregnant mother and says, what do I do? And she says, their police were coming in to search and they came in. Now, you know the rules of pleading, I don't have to go through them. The Judge Baker said that did not state a claim for an illegal search under the Fourth Amendment. There is the exception for walking up the usual public entryway, which would be pulling into the drive, getting out, going to the front door. And I know there's exceptions factually, and that's the problem with ruling on the complaint. Some houses, the rear door is an entryway. Judge Hamilton, you're more from Indiana, the rural areas, as I grew up in, that sometimes they do it there. I guess I'm the hick on the panel. Well, actually, I was born in Indianapolis. My father was at Fort Harrison, so it wasn't by choice. Your father was at what? At Fort Harrison Army Finance Center. A lot of people passed through there. Mr. Stegall, let me just ask you a couple of quick questions about this. Yes. I assume we're going to be talking about some of these same issues with the next case as well. Yes. In the visit to the Vinson property, did the police actually enter the house itself? No. Or did they just go into the garage? They looked in the garage, and then they looked in the windows. Okay. And can you give us some idea of what was going on here? Or I hope defense counsel will. When we read about DNA tests and fingerprints regarding a missing trailer? Two stolen lawnmowers, Judge. I forgot the lawnmowers. Yeah. That's right. Unbelievable. I don't know. You don't know? I don't know. That's why I brought the lawsuit. Okay. And then Judge Baker says he wants these separate, very experienced judges we hear before, as Judge Shadid. And I can remember the days when I was two years out of law school, and he was 48 or 49, first appearing, who usually gets it right, and I just came out of, Judge Baker, what's going on? On the statute of limitations, it's probably premature to have gotten to this, but I guess I'm a little confused. Maybe somebody can explain to me why simply that separation of the cases doesn't carry forward, why the earlier filing date doesn't carry forward. Well, I don't understand it because the rule clearly allows you to sever parties the way you want, and it was timely filed. But I should cite, I didn't do a reply, Illinois has a one-year savings statute that's part of Section 1983 that if it's dismissed without prejudice, you have one year to refile. It's 735-217, I think. I'll cite it, but it may be off. It's either 217 or 219. You got it, but I'm not sure it strictly applies by its terms. It may not, but I thought the rule itself on Joinder was, well, if the judge tells you to file another lawsuit, you do what the judge says. I didn't think we had a statute of limitations problem out of that. On appeal, your arguments seem to be limited to the three officers directly involved in the warrantless search. So I take it you're conceding that you failed to state a claim against the other defendants. The others were there for the way to get at the money under Carver versus. So I take it you concede that we're not. Right. Well, I didn't give it up because I don't know what it will show. I thought you want to leave the counties in the case because of indemnification only. Right. And I think technically the sheriff has to be there because the sheriff makes the request to the county. I mean, it's an easy enough matter to dismiss out which one shouldn't be there. The purpose of Carver, the sheriff, as you know, went to the Supreme Court is to get all of them before the court. And it is a sheriff's expenditure, I know. And so that's why they're in there. You're right. I don't see any policy involved here. These guys were on their own. Where were the windows that the police looked? Well, one was a sliding glass door out back, and then the other were around. And that's why we needed them. And the other one was what? Others were the typical house windows in the garage and other places. They had a front door, and that's why, I mean, we needed a factual record. This is out in the country, and I had the investigator go out, but I didn't have all of my photographs and things ready. Now, the police spoke to the 14-year-old, didn't they? Yes, and they told him they were the police. Did she open the door to them, or were they speaking through the door? Well, open the door and ask them who they are. They said, we're coming in to search. And, of course, the consent issue, age, number of police officers present, whether they asked, I would submit as such. Did they say they asked her, the child, for consent? What I base the allegations are from what I heard from the child was they said, we're coming in to search. Not regular. Of course, that's a 14-year-old witness, Your Honor, but that's what I had. We got a dismissal, and then the other defendant moves for judgment on the pleadings. You know these rules as well as I do, and it's what I say. I was thinking about what to say in argument, and I say, you know, in this case. I've done it many times in the district court. It's the first time I've done it here. Okay, well, thank you, Mr. Stegall. We've enjoyed your presentation. Ms. Davis? May it please the court. Serenka Davis on behalf of Defendant Appellees Vermillion County, Sheriff Patrick Hartshorn, and Deputy Jerry Davis. If I may just start out. With all due respect to counsel, a lot of what he just said to you is not actually included in the complaint, and I believe that is the biggest problem. I was very troubled by your citation to Georgia versus Randolph for the idea that an 8-year-old might have the ability to consent to a police officer crossing the threshold. And your suggestion that this supports a child's consent for the search that occurred here. Because here is how the full quote from Georgia versus Randolph continues. Quote, but no one would reasonably expect such a child to be in a position to authorize anyone to rummage through his parent's bedroom. That would seem to destroy your argument that a child could consent to the search of the parent's attached garage. Would it not? With all due respect, I disagree with you, Your Honor, based on some of the other case law that deals specifically with children or teenagers of like age of CAB in this complaint. Why would you have cited to Georgia and given us half the site? Why would you do such a thing? You know, we read these. I'm sure you do. I don't know that I can answer that question for you, Your Honor. I think that the three other cases that are cited before it are clearly on point. What is the indication that the police asked for consent? Well, according to the complaint, the officers spoke with the 14-year-old and, according to the complaint, said that he was there to search the house. Yeah. Well, how is that? What does that have to do with consent? You're announcing, I'm going to search your house. Not saying, may I search your house. I'm going to search your house. I think if the 14-year-old did not want to allow them to do that. That is not asking for consent. What you've been arguing. That's ridiculous. A ridiculous position you take. What you've been arguing is that the 14-year-old consented by silently complying with an officer's statement. Not an officer's request, but an officer's statement that he had to search. I am having... So you're buying Judge Baker's equation of comply with consent, which is wrong. That is not what comply means. If I say I am complying under duress, yeah, I have to comply. Right? That's not consent. I agree with you. He shouldn't have said that. I think the situation here, there was no allegations of any sort of duress. I believe that... The officer, I'm quoting the complaint. The officer, after staring inside the house, told CAV he was a police officer and said he had to conduct a search of the house. Then skipping CAV, complied with the officer's statement. Correct. So you think this 14-year-old should have said, well, I'm sorry. I will not permit you to search my house. That's what you're suggesting? I'm suggesting it's... Oh, come on. It's possible that a 14-year-old who was left home alone with her younger sibling... This is ridiculous. Remember, you all actually, in this case, unlike the last one, did file a motion to dismiss, correct? Our co-defendants filed the motion to dismiss, yes, Your Honor.  Yes, Your Honor. So how does this... You said it's possible she might have consented, and I can imagine a world in which that's true. That's not the standard under 1286, right? I think the allegations need to show some plausibility that the officers violated the Fourth Amendment rights in this situation. I think they're very vague in terms of what the officers actually did and where they did it. Well, are you saying that even if there was no consent, there was still no violation of the Fourth Amendment? Your Honor, I'm saying that the complaint... Yes or no? Yes or no? No. I don't believe the complaint includes enough beyond a speculative level that the Fourth Amendment was violated. What's the speculative level? I don't understand. Is it your view that since they just went into the garage or looked in the garage or something, there wasn't a search? Well, the garage could have been open. What do you mean, could have been open? What are you talking about? It could have been open? What does that mean? You go walking into a stranger's house because the door is open? That's an implied invitation? Of course not, Your Honor. Leave your garage door... So what are you saying? So the allegations state that these officers drove through a lane onto the driveway in front of the garage of this residence, and one of them walked to the home and spoke with this minor. They're parked in front of the garage. If the garage were open, and they're looking for trailers and lawnmowers, they're not looking... There's no allegation that they were looking in corners or in any drawers or anything of that sort. I don't think that there would be a Fourth Amendment violation, not that one is pled in the four corners of the complaint. So what was going on with this case? DNA? Fingerprints? I'm not quite sure what that is referring to. We were part of the Olson case as well. It has to do with the Olson case. Right, it's with the Olson case. You're not involved in it? We are not a part of that anymore. But you were the county with the lawnmower prosecution, right? Yes, there was a prosecution going on against Mr. Olson, which was dismissed pursuant to an agreement between his criminal counsel and the state's attorney with regard to the appeal in the civil litigation that he brought against the county. We hear from time to time about backlogs in processing, for example, DNA samples involving sexual assaults and murders and so on. Perfectly honest with you, I cannot answer that question, Your Honor. What was going on with the backlog? I cannot. Now your notion is that police can, without a warrant of course, police can drive into, can enter someone's driveway, drive around on their property, and if there are any open doors or open garage doors, they can, what, peer inside, go inside? Is that your position? It's not, Your Honor. What is your position? The allegation of the complaint is that these officers drove their vehicles in front to the attached garage of the home. Was that on the street or were they in a driveway? It doesn't state in the complaint. This is one of the reasons why it's vague because the complaint doesn't state which officer, where they were walking, it just says they walked around the house through the curtilage. But look, he, but the officer said to the 14-year-old, we have to search the house. He's using the language, the Fourth Amendment language, saying we have to search the house. But you're saying it wasn't a search, it was something else. Why did he say we have to search the house if he's not searching? I'm not necessarily saying that. I'm saying by the allegations in the complaint the way they're pled. Look, what did he mean when he said we have to search the house? I can't answer that question for him. As if he thought he was searching the house when he looked in the garage. Was he on their property when he looked in the garage or was he on the street? I don't know in the complaint. Well, wouldn't it be ridiculous if he says I have to search the house and then he goes to the street and he looks into the garage? I suppose so, yes. Yes, that's ridiculous. Okay, well, thank you very much, Ms. Davis. Mr. Elward? Mr. Edward, sorry. Elward. Elward. That's okay, thank you. I'm probably going to walk into the fire here a little bit, but I'm going to speak on behalf of the Champaign County defendants. I think the problem that we have with this case is. . . On behalf of who? Pardon me? Who are you representing? I am the Champaign County defendants, which include the county and the police officers and the sheriff. The problem that I think we have with this case is kind of exemplified by the conversation that we just had here. It's nothing but speculation. The questions that the court asks, we don't know the answers to. Why don't we know those answers? Because the case is gone. Because you're here now. They're not in the complaint. Well, what is this business of requiring detailed pleading? What's that about? Pardon me? You could ask them for, you know, I don't know if people ever mention bills of particular anymore, bills of particulars. You can tell the judge, you know, they're complaining. We can't respond. We don't know enough. So we want a fuller complaint, right? You can do that, but we didn't do that here. And I would say. . . Why did you do that here? I don't know why they didn't do it here, Your Honor. I was not. . . Well, it doesn't look good for you that they didn't do that here. Now you picket the complaint because it doesn't have comprehensive allegations. Well, I would remind the court that the Vincent filing is actually, could be considered an amended complaint because it was part of the Olson case. It was a part of the Olson complaint. And that was dismissed for failure to plead an adequate claim. That was part of the. . . That was incorrect. So this is a really amended complaint. That was incorrect as well. Yeah. But what do you think is missing here? I think there has to be some type of particularity as to consent. For example, we've talked about the issue of. . . No, there's no consent. Wait a second. No, no, no. You think somebody who is pleading a Fourth Amendment violation has to Is that what you're saying? I think in a situation like this where you have a. . . Supposedly, if we listen to what he's telling the court, which is totally different from what's stated in the complaint, if he's going to say. . . Of course not. It's perfectly consistent. . . That this is not a consensual search. Well, obviously it's not consensual. Because of the minor. Then I think he needs to contest that. No, he's saying it's not consent at all. What's pleaded in the complaint would state a violation for a mature adult, another police officer who knows or a lawyer who knows the Fourth Amendment. I guess I disagree with that. The police officer says. . . I quoted the complaint. What's wrong with that? I look at paragraphs 21 and 22. The officer, after staring inside the house, told the daughter he had to conduct a search of the house. She complied with the officer's statement. That is not consent. She complied. How do we get to all these discussions? Let's try this example, counsel. Let's try this example. The police officer comes up to you and says, Get on the ground and don't move. And you do. Have you consented? It depends if he has a gun out. Seriously, I'm going to ask him why. Seriously. I think in a situation like this, they have the obligation to plead some of the facts which are going to lead to or answer these discussions. If we look at what they plead, it doesn't rise to the level that they have to. What Supreme Court or Seventh Circuit authority says that in a Fourth Amendment case, the plaintiff, in a civil case, the plaintiff must anticipate a potential exception to the warrant requirement and plead their way around it? You don't have to anticipate exactly. In this particular case, what authority? I don't have a case that says that. What I'm saying is that on these allegations, they haven't compensated. No, you're really out to lunch. Okay. Well, we thank you for your time. So, Mr. Stegall, do you have anything further? Happy birthday. Okay. Okay, so we'll move on to our next case.